**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND SOTO, R.C. SOTO & SONS, INC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| THE CITY OF WEST CHICAGO, JOANNE | ) | |
| KALCHBRENNER,  ALDERMAN JAMES | ) | |
| BEIFUSS, ALDERMAN RUBEN PINEDA, and | ) | JURY TRIAL DEMANDED |
| ALDERMAN LORI CHASSEE, | ) | |
| | ) | |
| Defendants. | ) | |

<u>COMPLAINT</u>

NOW COME the Plaintiffs, RAYMOND SOTO and R.C. SOTO & SONS, INC., by and through their attorneys, Katz Law Office, Ltd., and for their Complaint under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1984, 42 U.S.C. § 3604(a), state as follows:

PARTIES

1.     Plaintiff RAYMOND SOTO (hereinafter "Mr. Soto"), 1N939 Saddlewood Drive, Maple Park, Illinois 60151, is a United States citizen of Mexican descent.  Mr. Soto is the President and Secretary of R.C. Soto & Sons, Inc., an Illinois corporation engaged in the business of constructing residential and commercial structures.

2.     Mr. Soto has in the past and is presently the President of R.C. SOTO & SONS, INC.

3.     Plaintiff R.C. SOTO & SONS, INC. is an Illinois corporation engaged in the business of constructing and rehabilitating residential and commercial structures in the State of Illinois, including the City of West Chicago.

4.     Defendant CITY OF WEST CHICAGO (hereinafter "CITY"), 475 Main St., West Chicago, Illinois, is a municipal corporation organized under the laws of the State of Illinois.

5.     Defendant JOANNE KALCHBRENNER (hereinafter "KALCHBRENNER"), was the Community Development Director for Defendant CITY at all times relevant to this complaint, and is named in her personal and official capacity.

6.     Defendant ALDERMAN JAMES BEIFUSS (hereinafter "BEIFUSS"), was a member of the City of West Chicago City Council at all times relevant to this complaint, and is named in his personal and official capacity.

7.     Defendant ALDERMAN RUBEN PINEDA (hereinafter "PINEDA"), was a member of the City of West Chicago City Council at all times relevant to this complaint, and is named in his personal and official capacity

8.     Defendant ALDERMAN LORI CHASSEE (hereinafter "CHASSEE"), was a member of the City of West Chicago City Council at all times relevant to this complaint, and is named in his personal and official capacity

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this is a civil action arising under the United States Constitution and laws of the United States and pursuant to 28 U.S.C. § 1367(a) supplemental jurisdiction.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as all relevant events and actions giving rise to the causes of action herein stated occurred in this district.

## FACTS COMMON TO ALL COUNTS

11.     On or about May 10, 1999, Mr. Soto was in the process of closing on a home built by his company at 427 Ann St., West Chicago, Illinois.  At that time, an inspector employed by Defendant CITY, Paul Barmantje, insulted Mr. Soto's father, at that time Vice President of R.C. Soto & Sons, Inc., and accused Mr. Soto and his father of housing a Hispanic family in the garage of said home.

12.     At the request of Mr. Barmantje, Mr. Soto entered the home and opened up the garage, where Mr. Soto showed Mr. Barmantje that no "Mexicans" were living at the time.

13.     Mr. Soto then complained to Defendant CITY regarding his treatment by Mr. Barmantje, but never received a reply from Defendant CITY.

14.     On or about July 1, 1999, Mr. Soto was involved in the purchase and construction of a home at 421 George St., West Chicago, Illinois.  Mr. Soto was continually harassed by an Alderwoman at the time, Alderwoman Baxter. Alderwoman Baxter also complained to Mike Baker, Assistant Community Development Director for

Defendant CITY at the time.  When Mr. Soto notified Mike Baker that he was being unreasonably harassed, he was merely told, "I know but she's an Alderwoman."

15.     After the home at 421 George St. was completed and a Hispanic family moved in, the Hispanic homeowners were harassed and victimized as representatives of Defendant CITY entered the home in violation of federal and state law based on unfounded claims of overcrowding. As a result, suit was filed in the United States District Court for the Northern District of Illinois.  Said suit was settled after Defendant CITY agreed to pay the plaintiffs in said action $90,000 and enact reforms that would ostensibly eliminate future discrimination against Hispanic residents of West Chicago.

16.     On or about February 1, 2000, Mr. Soto purchased a corner lot at 111 Brown St., West Chicago, Illinois for $35,000.00.  Prior to purchasing the lot, Mr. Soto submitted plans to build a home identical in design to a home he had previously completed on a corner lot in the City of West Chicago.

17.     After purchasing the lot and submitting plans for the home, Mr. Soto was informed by Defendant CITY that corner yard setback rules had been altered. As a result, Mr. Soto incurred further cost to design a home that had a decreased yard and increased overhang.

18.     On or about August 1, 2001, Mr. Soto purchased a corner lot at 111 Pomeroy St., West Chicago, Illinois for $36,000.00.  Mr. Soto submitted plans identical in design to the revised home built at 111 Brown St., which had been built in accordance with Defendant CITY's altered setback ordinance.

19.     After building plans were submitted, Mr. Soto was notified by Defendant CITY that once again the ordinance delineating corner lots had changed, this time decreasing the size of overhangs affecting lot encroachment.   As a result, Mr. Soto incurred further cost to design a home that had a decreased overhang.

20.     On or about March 1, 2003, Mr. Soto was informed of an opportunity to purchase a lot at 872 Sterling Ave., West Chicago, Illinois.  Mr. Soto took a survey and legal description, as well as his plans for a home to built for Efredo Alvarado, a Hispanic customer, to Defendant KALCHBRENNER, the Director of Community Development for Defendant CITY.  (See Attached Exhibit "A", Copy of Survey for Proposed Home).

21.     Defendant KALCHBRENNER verbally assured Mr. Soto on no less than three separate occasions that the lot was buildable and that his plans were in accordance with the applicable zoning ordinances.  (See Exhibit "B", Copy of Excerpt from Report of Proceedings before the Zoning Board of Appeals).

22.     Despite Mr. Soto's repeated requests for assurance in writing, Defendant KALCHBRENNER continued to verbally declare the lot buildable. Mr. Soto was then informed that there was another buyer for the 872 Sterling Ave. property, and was therefore forced to purchase the property for $55,000 in reliance upon the assurances of

Defendant KALCHBRENNER that a home could be built thereon.   (See Attached Exhibit "C", Copy of Standard Vacant Land Sales Contract).

23.     When Mr. Soto then requested a building permit to begin building according to his plans submitted previously to Defendant KALCHBRENNER, he was informed the lot was not buildable according to his plans.

24.     On or about June 1, 2004, Mr. Soto was installing a four foot wide sidewalk in front of recently constructed homes. At the instruction of Dan Johnson, an inspector employed by Defendant CITY at that time, Plaintiff widened the sidewalk to five feet. When Mr. Johnson returned to inspect the sidewalk, he informed Mr. Soto that the sidewalk was 0.25 inches higher than allowable for approaches in the City of West Chicago.

25.     When Mr. Soto informed Mr. Johnson that the sidewalk was altered in reliance on Mr. Johnson's instructions as an inspector for Defendant CITY, Mr. Johnson did not respond, and instead required Mr. Soto to tear out and relay the sidewalk to its original standard, at a cost of $12,000 and lost goodwill and reputation from those customers wishing to move in to their homes fronting the sidewalk.

26.     On or about May 5, 2005, Mr. Soto was confronted during an inspection by Paul Barmantje, an inspector employed by Defendant CITY.  Mr. Barmantje informed Mr. Soto that he was now required by Defendant CITY to measure individual room sizes because Mr. Soto was contributing to overcrowding issues in the City of West Chicago. Mr. Barmantje inquired of Mr. Soto whether his company only built homes for Hispanics, and if Mr. Soto had formed his business on the basis of a minority grant.

27.     On or about August 3, 2005 Mr. Soto was notified by a representative of Defendant CITY that due to an issue with a gas pipeline located underneath a property owned by Mr. Soto, Defendant KALCHBRENNER had been ordered by unknown entities at Defendant CITY not to review any of Mr. Soto's other projects going forward. (See Attached Exhibit "D", Copy of Email from Jeff Harris).

28.     Said refusal to review encompassed at least 25 lots under construction in the City of West Chicago at the time.

29.     Mr. Soto was forced delay all work on projects within the City of West Chicago until on or about the spring of 2006, causing great financial hardship to Mr. Soto and forcing him to lose customers, subcontractors, and layoff workers.

30.     As a result of the delays caused by Defendant CITY and Defendant KALCHBRENNER, Mr. Soto lost sales contracts to six properties included in a project called Bishop Place. Lost profits on these properties amounted to more than $410,000, as well as $115,000 in interest paid on the lots, and $18,000 paid in taxes.

31.     On or about June 15, 2006, Mr. Soto filed a variance request for the property at 872 Sterling Ave., West Chicago, Illinois.  (See Attached Exhibit "E", Copy of Application for Variance and Statement of Hardship).

32.     On or about September 19, 2006, a hearing was held before the City of West Chicago Plan Commission/Zoning Board of Appeals regarding Mr. Soto's requested variance.  (See Attached Exhibit "F", Copy of Plan Commission/Zoning Board of Appeals Agenda dated September 19, 2006).

33.     Prior to the City of West Chicago Plan Commission/Zoning Board of Appeals meeting September 19, 2006, Laurie Jenson, owner of property adjacent to 872 Sterling Ave., circulated a petition to members of the neighborhood to sign indicating their preference for Mr. Soto's variance request to be denied.  (See Attached Exhibit "G", Copy of Excerpt from Report of Proceedings before the Zoning Board of Appeals).

34.     Upon information and belief, adjacent property owners were aware that Mr. Soto is Hispanic and that his prospective customer for the 872 Sterling Ave. property was also Hispanic.  (See Attached Exhibit "H", List of R.C. Soto & Sons, Inc. Customers).

35.     According to Census 2000, a report created and published by the United States Census Bureau, the population of the relevant city block including 872 Sterling Ave. was made up of 68.7% White/Non-Hispanic persons and only 25.2% Hispanic persons.  (See Attached Exhibit "I", Copy of Census 2000 Redistricting Data).

36.     Mr. Soto's plans for the home to be built at 872 Sterling Ave. indicated a comparable or greater square footage and market value to all other homes in the neighborhood.

37.     At said hearing, adjacent property owners and Defendant Alderman JAMES BEIFUSS remarked that allowing Mr. Soto to build his planned home on the lot would negatively impact property values and the character of the neighborhood, despite the fact that existing homes in the neighborhood were located in close proximity to one another, consistent with Mr. Soto's plans for Mr. Alvarado's home.

38.     At said hearing, both adjacent property owners and City Council members relied on Zoning Ordinance 8.5 to state that 872 Sterling Ave. was a vacant lot and should therefore not be buildable or be granted a variance to become buildable.  (See Attached Exhibit "J", Copy of Letter from Michael and Beverly Meirick)

39.     At a Special Development Committee meeting September 26, 2006, adjacent property owner Michael Meirick admitted that he purchased his property in violation of Zoning Ordinance 8.5 and Defendant KALCHBRENNER admitted that Defendant CITY had reviewed said Ordinance prior to approving Meirick's purchase of said property. (See Attached Exhibit "K", Copy of Special Development Committee Minutes dated September 26, 2006).

40.     Mr. Soto's variance request was subsequently denied on the pretextual grounds that "shoe-horning" the proposed house into the lot would cause harm to property values in a neighborhood where houses were regularly built in close proximity to one another.  (See Exhibit "K"; Exhibit "L", Copy of Special Development Committee Minutes dated November 13, 2006).

41.     On or about October 1, 2007, Mr. Soto was involved in the construction of a subdivision called "Bishop Place" within the City of West Chicago.  Mr. Soto was approached by Denny Simms, Civil Engineer for Defendant CITY, who told Mr. Soto that he would be required to add monolithic window wells to the homes in Bishop Place before plans would be approved.

42.     Prior to speaking to Mr. Simms, Mr. Soto had submitted and received approval for his subdivision plans, which did not include any mention of monolithic window wells.

43.     Mr. Soto had previously constructed approximately forty homes in the City of West Chicago and had never been required to install a monolithic window well.

44.     Mr. Soto ask Mr. Simms to refer him to any home in the City of West Chicago that included monolithic windows, and was told that there no examples of monolithic window wells within the City of West Chicago, but that DuPage County required such window wells for 100 year flood plains.

45.     When Mr. Soto confronted Defendant KALCHBRENNER regarding Mr. Simms' statements, Defendant KALCHBRENNER informed Mr. Soto that if Mr. Simms stated that is what he wanted, then Mr. Soto would be required to comply, but that Defendant CITY had no such policy in place.

46.     Mr. Soto was then forced to spend $1,500 on further drafting of plans for the Bishop Place Project, and an extra $18,000 for installation of said monolithic window wells.  (See Attached Exhibit "M", Copy of Monolithic Window Well Plan).

47.     On or about February 27, 2008, Plaintiffs were informed by Defendant CITY that property owned by the Plaintiffs at 139 West Stimmel Street, West Chicago, Illinois 60185 would be inspected due to suspicions of overcrowding. Defendant CITY merely alleged that it had "received information" the house was over-occupied. When the property was inspected, no overcrowding was found.  (See Attached Exhibit "N", Letter from Defendant CITY).

48.     On or about May 27, 2008, Mr. Soto constructed a home at 268 Augusta Street, West Chicago, Illinois.  Mr. Soto called Defendant CITY for a driveway inspection but was told that Defendant KALCHBRENNER was out of the office for a week and had left explicit instructions not inspect any of the properties under construction by Mr. Soto's company, R.C. Soto & Sons, Inc.  This company-wide order was issued as a result of a purported water main issue at 268 Augusta.

49.     After being told of his singular treatment by Defendant CITY, Mr. Soto personally emailed Michael Kwasman, Mayor of Defendant CITY, and informed him that no water main issue existed at the 268 Augusta property.  Mayor Kwasman then ordered that Mr. Soto's property be inspected the following day.  (See Attached Exhibit "O", Copy of Email from Plaintiffs to Mayor Kwasman).

50.     On or about March 20, 2009, Mr. Soto was informed by Doug Nooden, Assistance Engineer for Defendant CITY, that he would be required to submit plans indicating the location of gas service for a property at 1216 Bishop Street, West Chicago, Illinois.

51.     Mr. Soto had never been required to include gas service location for any of the approximately 40 homes he had previously constructed within the City of West Chicago.

52.     In order to comply with Mr. Nooden's order, Mr. Soto submitted four separate plans, incurred additional surveyor fees, suffered a four month delay in construction of the home, and lost the contracted buyer for the home as a result.

53.     On or about May 29, 2009, Mr. Soto attended a ribbon cutting ceremony for a new restaurant in the City of West Chicago.   Also present at the ceremony and subsequent opening of the restaurant were Defendant Alderman RUBEN PINEDA and Defendant Alderman LORI CHASSEE.

54.     After the ribbon ceremony, Mr. Soto and the other attendees entered the restaurant to eat.   While Mr. Soto was eating at his table, Defendant PINEDA and Defendant CHASSEE walked by. As they passed Mr. Soto's table, Defendant PINEDA stated to Defendant CHASSEE within Mr. Soto's hearing, "I didn't know they allowed Mexicans in here," and both Defendant PINEDA and Defendant CHASSEE laughed as they walked away.

55.     This blatant public discrimination caused Mr. Soto great mental anguish and embarrassment in front of many members of the City of West Chicago community.

56.     On or about May 1, 2009, Mr. Soto received notices of violation on six of his properties for failure to maintain grass and weed levels below eight inches.  Notably absent from these properties were the properties at 872 Sterling Ave. and 880 Sterling Ave., where the grass and weeds had grown to approximately four feet high.  Defendant KALCHBRENNER's secretary, Laurie Jenson is the owner of the lot adjacent to 872 Sterling Ave., and made it known at the aforementioned hearing that she and her neighbor across the vacant lot, Michael Meirick, valued the privacy this vacant, overgrown lot created.

57.     After receiving notification of the violations, Mr. Soto contacted John Fincham, Assistance Community Development Director for Defendant CITY.   Mr. Fincham then agreed to notify Mr. Soto the next time a similar violation occurred.

58.    On or about September 10, 2009, Mr. Soto received an email from Mr. Fincham warning him that the same six properties were in need of mowing. Mr. Soto informed Mr. Fincham that he would have the properties mowed by September 14, 2009. Defendant CITY then mowed the lots on September 13, 2009, in spite of the conversation and agreement between Mr. Soto and Mr. Fincham.  (See Attached Exhibit "P", Copy of Violation Notices).

59.    On or about September 21, 2009, Mr. Soto received invoices from Defendant CITY demanding payment for mowing each of the six lots at a cost of $195.00 per lot for a total cost of $1,170 to Mr. Soto.

60.    Upon information and belief, similarly situated contractors who are not members of a protected class are not treated in the same manner when similar mowing violations are issued by Defendant CITY.

COUNT I: VIOLATION OF 14TH AMENDMENT EQUAL PROTECTION CLAUSE

NOW COME, Plaintiffs, Raymond Soto and R.C. Soto & Sons, Inc., by and through their attorneys, Katz Law Office, Ltd., and for their Complaint against the CITY OF WEST CHICAGO, JOANNE KALCHBRENNER, JAMES BEIFUSS, RUBEN PINEDA, and LORI CHASSEE, allege as follows:

0.    The allegations in the foregoing paragraphs are incorporated by reference.

61.    The Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States prohibits States from, "deny[ing] to any person within its jurisdiction the equal protection of the laws.

62.    Defendants CITY, KALCHBRENNER, BEIFUSS, PINEDA, and CHASSEE denied Mr. Soto equal protection of the laws when Defendants and their agents on numerous above-mentioned occasions harassed Mr. Soto, denied him access and ability to build homes for minorities based on previously submitted and approved plans, refused to review any of his active projects, enforced zoning ordinances disparately to different classes, issued violations disparately to different classes, and publicly humiliated Mr. Soto through discriminatory comments.

63.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress….

64.     Defendants CITY, KALCHBRENNER, BEIFUSS, PINEDA, and CHASSEE
are "persons" within the meaning of 42 U.S.C. § 1983.

65.     The statute of limitations for an action brought under 42 U.S.C. § 1983 in
Illinois is two years.  *Weiss v. Village of Downers Grove*, 25 Ill. App. 3d 466, 470, 588
N.E. 2d 585 (Ill. App. 1992).  However, where a violation is characterized by continuing
unlawful acts and conduct, the statute of limitation is tolled under two years after the last
unlawful act.  *McGee v. Snyder*, 326 Ill. App. 3d 343, 352, 760 N.E. 2d 982 (Ill. App.
2001).

66.     Defendants and their agents created a pattern of continuing unlawful acts and
conduct throughout the time period covered in the facts stated above.

67.     Defendants and their agents acted under color of state law to deny Mr. Soto
Equal Protection rights under the Fourteenth Amendment.

68.     Mr. Soto is a Mexican-American citizen, and therefore a member of a
protected class.

69.     Upon information and belief, similarly situated contractor/builders in the City
of West Chicago are not treated in the same manner as Plaintiffs.

70.     Defendants knew of Plaintiffs' racial background and the race of their
clientele and intended to treat Plaintiffs in a disparate manner based on race.

71.     As a result of Defendants' actions, Plaintiffs have suffered monetary damages
in the form of additional expenses, fines, and lost profits; loss of reputation and goodwill
as a business in the City of West Chicago; and severe mental anguish over the course of
nearly a decade of discrimination.

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.  Award damages in an amount to be determined at trial, but not less than
    $1,000,000, to Plaintiffs Raymond Soto and R.C. Soto & Sons, Inc.;

B.  Enjoin Defendants from further discrimination and harassment of Plaintiffs
    Raymond Soto and R.C. Soto & Sons, Inc.;

C.  Award punitive damages as the interests of justice require;

D.  Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

E.  Grant any other such relief this Court deems appropriate.

## COUNT II: VIOLATION OF THE FAIR HOUSING ACT

NOW COME, Plaintiffs, Raymond Soto and R.C. Soto & Sons, Inc., by and through their attorneys, Katz Law Office, Ltd., and for their Complaint against CITY OF WEST CHICAGO, JOANNE KALCHBRENNER, and JAMES BEIFUSS alleges as follows:

0.    The allegations in the foregoing paragraphs are incorporated by reference.

72.    42 U.S.C. § 3604(b) provides that it shall be unlawful, "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection herewith, because of race, color, religion, sex, familial status, or national origin."

73.    Mr. Soto is a United States citizen of Mexican descent and R.C. Soto & Sons, Inc. builds homes primarily for Hispanic customers.

74.    Defendants CITY, KALCHBRENNER, and BEIFUSS evidenced a knowledge of Mr. Soto's national origin and the national origin of his clientele through comments such as, "Oh, another Italian family", and questions relating to whether or not Mr. Soto built homes for anyone other than "Mexicans".  Defendants were also made aware of the Hispanic purchasers of Plaintiffs' homes through multiple documents filed at Defendant CITY offices through the building process.

75.    Plaintiffs were qualified to build homes and their Hispanic clients had signed contracts and were qualified to purchase Plaintiffs' homes after they were built.

76.    Defendants CITY, KALCHBRENNER, and BEIFUSS discriminated in violation of 42 U.S.C. § 3604(b) by making it virtually impossible for Plaintiffs to build housing for Hispanic residents of the City of West Chicago, despite the willingness and capability of Plaintiffs and Plaintiffs' customers.

77.    42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress….

78.    Defendants CITY, KALCHBRENNER, BEIFUSS are "persons" within the meaning of 42 U.S.C. § 1983.

79.    The statute of limitations for an action brought under 42 U.S.C. § 1983 in Illinois is two years. *Weiss v. Village of Downers Grove*, 25 Ill. App. 3d 466, 470, 588

N.E. 2d 585 (Ill. App. 1992). However, where a violation is characterized by continuing unlawful acts and conduct, the statute of limitation is tolled under two years after the last unlawful act. *McGee v. Snyder*, 326 Ill. App. 3d 343, 352, 760 N.E. 2d 982 (Ill. App. 2001).

80.     Defendants and their agents created a pattern of continuing unlawful acts and conduct throughout the time period covered in the facts stated above.

81.     Defendants and their agents acted under color of state law in denying Plaintiffs the protections of 42 U.S.C. § 3604.

82.     Defendants are liable to Plaintiffs for damages  in an amount to be determined at trial, but not less than $1,000,000, for depriving Plaintiffs of rights and privileges secured by 42 U.S.C. § 3604 and causing him needless expense, lost profits, loss of reputation, and severe mental anguish over a decade of discrimination.

WHEREFORE, Plaintiffs respectfully pray that this Court:

A.  Set this matter for jury trial;

B.  Award damages in an amount to be determined at trial, but not less than $1,000,000, to Plaintiffs Raymond Soto and R.C. Soto & Sons, Inc.;

C.  Enjoin Defendants from further discrimination and harassment of Plaintiffs Raymond Soto and R.C. Soto & Sons, Inc.;

D.  Award punitive damages as the interests of justice require;

E.  Award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

F.  Grant any other such relief this Court deems appropriate.

Respectfully Submitted,

s/ Matthew A. Katz
_____
Attorneys for Plaintiffs

Katz Law Office, Ltd.
4105 West 26th Street
Chicago, Illinois 60623
773.321.6651