## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND SOTO, R.C. SOTO & SONS, INC., | ) | |
| | ) | Case No. 10 C 3602 |
| Plaintiffs | ) | |
| | ) | |
| -vs- | ) | |
| | ) | Judge Suzanne B. Conlon |
| THE CITY OF WEST CHICAGO, JOANNE | ) | |
| KALCHBRENNER, ALDERMAN JAMES | ) | Magistrate Judge |
| BEIFUSS, ALDERMAN RUBEN PINEDA, and | ) | Sheila M. Finnegan |
| ALDERMAN LORI CHASSEE, | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

The Defendants move for an order dismissing the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Defendants state as follows:

### INTRODUCTION

Plaintiffs allege they were racially discriminated against in a series of interactions with City employees involved in approving construction projects in the City of West Chicago (the "City"). Plaintiffs claim these events, dating back to 1999, amount to violations of Equal Protection under the 14th Amendment and violations of the Fair Housing Act, 42 USC § 3604. Plaintiffs filed suit on June 10, 2010, but they assert none of these claims is barred by the two-year Statute of Limitations because the events constitute a continuing violation. However, the facts pled by Plaintiffs show they were aware of the alleged wrongful treatment and its alleged racial animus ten years ago, so that the continuing violation doctrine is inapplicable.

The sparse allegations within the two-year Statute of Limitations (June 10, 2008 through June 10, 2010) are insufficient to state a claim on which relief may be granted. These allegations do not rise to the level of a violation of Equal Protection or the Fair Housing Act, in part because they fail to satisfy the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Further, absolute legislative immunity shields the Aldermen Defendants from liability, as all substantive acts alleged were votes on variances and ordinances. The Court should dismiss the case with prejudice.

## FACTUAL BACKGROUND

The following pertinent facts are drawn from the Complaint. Plaintiffs allege a series of incidents that occurred on or about the following dates, including:

* May 10, 1999: A City inspector accused Plaintiff Raymond Soto ("Soto") and his father of housing a Hispanic family in the garage of a home they had built. (Compl. ¶¶ 11-13.)

* February 1, 2000: The City changed its setback ordinance, and Soto incurred extra costs to re-design a house. (Compl. ¶¶ 16-17.)

* August 1, 2001: The City changed its setback ordinance, and Soto incurred extra costs to re-design a house. (Compl. ¶ 19.)

* March 1, 2003: Soto obtained verbal assurance from Defendant Joanne Kalchbrenner that a certain lot was buildable, but later incurred additional expense after learning the lot was not buildable. (Compl. ¶¶ 20-23.)

* June 1, 2004: The City required Soto to widen and then remove and rebuild a sidewalk that did not meet City code requirements. (Compl. ¶¶ 24-25.)

* August 3, 2005: The City required Soto to resolve issues with a gas pipeline on one of his properties before reviewing his other projects, causing lost profits. (Compl. ¶ 27.)

* November 13, 2006: The City denied Soto a variance, by unanimous vote of the Development Committee, consisting of Defendant Alderman Ruben Pineda and Defendant Alderman James Beifuss, along with the elected Mayor and other aldermen not named as defendants herein. (Compl. ¶¶ 34, 40, and Compl. Exhibit L.)

* October 1, 2007: The City required Soto to change previously approved building plans to include monolithic window wells because of a DuPage County flood plain requirement. (Compl. ¶¶ 41-46.)

* February 27, 2008: The City inspected one of Soto's properties to determine whether it was over-occupied. (Compl. ¶ 47.)

* May 27, 2008: The City placed a "hold" on inspections of Soto's properties until a water main issue was corrected. The "hold" was lifted the following day. (Compl. ¶¶ 48-49.)

* March 20, 2009: The City required Soto to submit plans showing gas service for one of his properties, when the City previously had not required him to submit such plans (Compl. at ¶¶ 50-51.)

* May 29, 2009: Soto overhears a comment that Defendant Ruben Pineda, who is also Mexican American, made to Defendant Lori Chassee to the effect of "I didn't know they allowed Mexicans in [this restaurant]." (Compl. at ¶ 54.)

* May 1, 2009: The City cites Soto for violating the grass and weeds ordinance when six of his properties had grass and weeds that were more than 8 inches tall, while failing to cite the owner or owners of two other properties who violated the same ordinance. (Compl. at ¶ 56.)

* September 21, 2009: Soto receives invoices from the City for abatement of the grass and weeds violations at the same six properties approximately one week earlier. (Compl. at ¶¶ 58-59.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). Such a motion tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Although when considering a motion to dismiss a court accepts as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inferences that can be drawn from them (see *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)), a court is not obligated to accept a complaint that merely raises the possibility of relief. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In addition, a court should not strain to find inferences not plainly apparent from the face of the complaint. *Beam v. IPCO Corp.*, 838 F.2d 242, 246 (7th Cir. 1988). The factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *Concentra Health*, 496 F.3d at 776 (quoting *Bell Atlantic*, 127 S.Ct. 1965, 1973 n.14).

3

## ARGUMENT

**A.      Absolute Legislative Immunity Requires Dismissal Of The Individual Aldermen Defendants, As All Substantive Acts Alleged Against Them Are Votes On Ordinances And Variances.**

The City's Aldermen are absolutely immunized for their acts of denying variances and changing setback ordinances. These votes are the only substantive acts Plaintiffs allege against Alderman James Beifuss, Alderman Ruben Pineda and Alderman Lori Chassee (Pineda's allegedly offensive comment is not independently actionable, as explained in more detail below.)

Absolute legislative immunity prevents individuals from being held liable for their legislative acts while serving as federal, state, regional or local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). The Supreme Court, in explaining the rationale for absolute legislative immunity, noted that in governing, individual government officials will make decisions that will often have adverse effects on other persons. *Forrester v. White*, 484 U.S. 219, 223 (1988). When officials are threatened with personal liability for their legislative decisions, this may cause them to be overcautious or to skew their decisions away from the objective criteria that best serve public policy. *Id.*

In *Bogan*, the trial court had determined the enactment of an ordinance eliminating the plaintiff's job was specifically targeted at the plaintiff for her exercise of free speech, but the Supreme Court held that the legislators' subjective intent should not even have been considered in determining whether absolute legislative immunity applied. *Id.* Absolute legislative immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Id.* at 55.

In this case, the Alderman defendants are accused of voting against a variance for one of Soto's properties and voting to change the City's setback ordinances, affecting some of his other properties. These discretionary, policymaking decisions regarding land use within the City are quintessentially legislative. Even Soto's allegation that these votes were directed at him personally will not prevent absolute legislative immunity from applying. Only the nature of the act and not the legislator's subjective intent is considered in applying absolute legislative immunity. The legislative acts of the Aldermen cannot subject them to liability, and Defendant Aldermen James Beifuss, Ruben Pineda and Lori Chassee must be dismissed with prejudice.

**B.    The Two-Year Statute Of Limitations Bars Recovery For The Majority Of Incidents Cited In the Equal Protection Claim.**

Because Section 1983 does not contain an express statute of limitations, federal courts use the forum state's statute of limitations for personal injury claims, which is two years in Illinois. *Jenkins v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). In certain situations the statute of limitations can be tolled by a continuing violation. A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. *Dasgupta v. University of Wisconsin*, 121 F.3d 1138, 1139 (7th Cir.1997).

In a discrimination context, the continuing violation doctrine allows alleged victims to wait before bringing actions until enough instances of discriminatory conduct have occurred to give the plaintiff a basis to believe that he was a victim of illegal discrimination. *Id.* Once the plaintiff has enough information to form this belief, the statute starts to run, and he is not entitled to wait before asserting his claim. *Id.* at 1141. The doctrine is not suited to cases where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress. *Wilson v. Giesen*, 956 F.2d 738, 743. Even a series of related unlawful acts will not

5

delay the limitations period if their character was apparent when they occurred. *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281-82 (7th Cir.1993).

The Seventh Circuit Appellate Court has offered this example. "Suppose that year after year, for ten years, your employer pays you less than the minimum wage. That is a continuing violation. But it does not entitle you to wait until year 15 (assuming for the sake of illustration that the statute of limitations is five years) and then sue not only for the wages you should have received in year 10 but also for the wages you should have received in years 1 through 9. The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries. *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008).

Soto filed his case on June 10, 2010. The two-year statute of limitations would therefore bar recovery for any alleged wrongful acts prior to June 10, 2008. Soto argues the continuing violation doctrine allows him to toll the statute of limitations. However, Soto has pled himself out of court by alleging that more than a decade before filing suit, he was aware 1) of the alleged harm, and 2) that it was motivated by alleged racial discrimination. In the very first incident Soto alleges, on or about May 10, 1999, he complained to the City after a City inspector allegedly accused him and his father of housing a Hispanic family in the garage of a home they had built. Soto next claims he incurred extra costs on or about February 1, 2000, to re-design a home after the City changed its setback requirements. (As noted above, absolute legislative immunity bars this claim.) Soto does not explicitly state the City changed its setback ordinance to injure him because of his race, but he incorporates these alleged facts into Count I as the partial basis for his Equal Protection claim. (Compl. ¶¶ 0, 62.)

Under the facts Soto alleges, he was aware as of February 1, 2000, that he suffered damages as a result of alleged discriminatory treatment by Defendants. Nothing prevented Soto from coming forward at that point to seek redress. Soto had all the information he needed to determine he had been harmed by alleged illegal discrimination. The statute of limitations started to run on February 1, 2000, and Soto was not entitled to wait another 10 years to file suit.

Soto alleges separate acts of discrimination through the years have caused him separate injuries. Specifically, Soto references another instance when he learned on August 1, 2001, that the Aldermen defendants voted to change the City's setback ordinance. Soto claims the legislation changing the setback requirements cost him money by preventing him from re-using house plans from earlier projects. Under these alleged facts, the two-year statute of limitations began running in 2001, and these claims are now time-barred.

Likewise, Soto claims he began investigating on or about March 1, 2003, whether he could build on the lot at 872 Sterling Avenue according to certain plans he submitted. Defendant Kalchbrenner allegedly told him he could, and then he found out after buying the lot that he could not build on it according to those plans. Again, he does not explicitly allege Kalchbrenner gave him bad information to injure because of his race, but he incorporates these alleged facts into Count I as the partial basis for his Equal Protection claim. There is nothing that would have prevented Soto from suing based on this allegation in 2003 instead of waiting to sue based on the same allegation in 2010. This claim is therefore barred by the two-year statute of limitations.

In yet another example, Soto alleges that in 2005, Kalchbrenner refused to review any of his projects until he had resolved an issue with a gas pipeline under one of his properties. Soto claims to have lost business as a result, and he attaches an e-mail to his Complaint as Exhibit D in which he asks the City to refrain from such "discriminatory treatment." This demonstrates

7

Soto knew of the alleged injury and the alleged discriminatory motive as of August 3, 2005, but chose not to file suit. The two-year statute of limitations has since expired.

Soto continues with a laundry list of alleged incidents and damages that he perceived as being racially motivated. He cites a 2006 vote denying him a variance to exceed setback requirements in order to build a house on a vacant lot. He alleges the variance denial was motivated by racial discrimination, but he chose not to sue until after the two-year statute of limitations had expired. Soto claims in 2007, a City inspector required him to change previously approved building plans to include monolithic window wells because of a DuPage County requirement for such window wells in flood plains. Again, he makes no factual statement that this requirement was motivated by racial discrimination rather than flood plain characteristics, but he incorporates these alleged facts into Count I as the partial basis for his Equal Protection claim. The two-year statute of limitations has since expired on these claims.

In February 2008, Soto alleges the City inspected one of his properties for over-occupancy. In May 2008, he alleges there was a "hold" placed on inspections of his properties until a water main issue was corrected. Soto alleges the "hold" was lifted the next day. Soto alleges in his Equal Protection claim that both incidents were motivated by racial discrimination. Both fall outside the two-year statute of limitations, and both are therefore barred. In addition, Defendants Kalchbrenner, Beifuss, Pineda and Chassee must be dismissed with prejudice as none of the substantive allegations against them fall within the two-year statute of limitations.

**C.    The Remaining Alleged Incidents Do Not Rise To The Level Of An Equal Protection Violation.**

After excluding the time-barred claims, Soto is left with nothing that can reasonably be viewed as a violation of Equal Protection. To state a claim for violation of the Equal Protection Clause, a plaintiff must state facts showing that the defendants' actions had a discriminatory

effect and were motivated by a discriminatory purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-636 (7th Cir. 2001). "Discriminatory effect" is shown by stating facts that would demonstrate plaintiff is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. *Id.* at 636. "Discriminatory purpose...implies more than...intent as awareness of consequences. It implies that the decisionmaker...selected or reaffirmed a particular course of action at least in part because of...its adverse effects upon an identifiable group." *Id.* at 645

Soto alleges that within the two-year statute of limitations period, a City staff member required him to submit plans showing gas service for one of his properties, when Soto had not been required to submit such plans on prior occasions. Soto alleges that on a different occasion, he overheard a comment that Defendant Ruben Pineda, who is also Mexican American, made to Defendant Lori Chassee, to the effect of "I didn't know they allowed Mexicans in [this restaurant]." Finally, Soto alleges the City cited him for violating its grass and weeds ordinance when six of Soto's properties had grass and weeds that were more than 8 inches tall. He claims the City failed to cite owners of two other properties that violated the same ordinance.

These allegations do not rise to the level of an Equal Protection violation. Taking Soto's pleading as true, the City did not treat him differently from some person outside a protected class by requiring him to submit plans showing gas service. Instead, the City simply required him to show gas service on his plans after it had previously not required this. Soto has failed to show any discriminatory effect or purpose.

Soto alleges that Defendant Pineda made a racially offensive comment to Defendant Chassee, who laughed, causing Soto mental anguish and embarrassment. Although Soto depends on this alleged remark to show a racial animus for his other allegations, he also apparently

9

intends it to be an independent source of liability for Defendant Chassee. The Complaint makes no other allegations regarding actions that Chassee took against Soto. It is unclear whether Soto intends the alleged comment to serve as an independent source of liability for Defendant Pineda, but Seventh Circuit case law is clear that it cannot. The use of racially derogatory language does not deprive a person of any constitutionally protected rights. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Specifically, a government actor's use of racially derogatory language to verbally harass someone does not deprive that person of equal protection of the laws. *Id.* If the use of such language is insufficient to violate equal protection, Defendant Chassee's alleged laughter at the remark would similarly be insufficient. This is the only action alleged against Chassee and Pineda within the Statute of Limitations, so these defendants must be dismissed.

Soto last alleges he received notices that six of his properties had grass and weeds taller than 8 inches, in violation of the City's grass and weed ordinances. He alleges that following a subsequent violation on these same six properties, the City abated the condition and sent him a bill. He alleges the City failed to cite the owner or owners of two other properties that were also in violation of the same ordinance.

Soto does not dispute his properties violated the grass and weeds ordinance, but alleges selective enforcement of the ordinance. However, the failure to treat all lawbreakers equally does not, by itself, violate Equal Protection. As noted in *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1995), many actions resulting in unequal enforcement are wholly unrelated to the kind that are actionable under equal protection law. The failure to enforce against all may be random, or may result from lack of resources, or an effort by the authorities to get the most "bang for their buck" by concentrating on the most notable lawbreakers. *Id.* "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being

allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country." *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1128 (7th Cir. 2004).

Instead, a claim under section 1983 for discriminatory enforcement of an ordinance must involve an element of "intentional or purposeful discrimination." *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980). There must be allegations of unfair and discriminatory conduct purposefully directed toward plaintiff. *Id.* To state a claim, an individual must allege "facts to show that while others similarly situated have generally not been prosecuted, he has been singled out for prosecution, and that the discriminatory selection of him was based upon an impermissible consideration such as race...." *U.S. Labor Party v. Oremus*, 619 F.2d 683, 691 (7th Cir. 1980).

In *U.S. Labor*, plaintiff alleged it was singled out for prosecution under the ordinance against soliciting in intersections because of its political views. In support, plaintiff alleged the Lions Club and another unknown group were allowed to solicit in intersections on two prior occasions. *Id.* at 690. The Seventh Circuit ruled these isolated incidents were too insignificant to raise an Equal Protection claim. *Id.* at 691. Similarly in our case, Soto claims only that the City did not enforce its grass and weeds ordinance against the owner or owners of two other properties. He demonstrates no racial animus or any effort to "single him out" for enforcement.

Soto attempts to salvage the Equal Protection claim by alleging that "upon information and belief, similarly situated contractors who are not members of a protected class are not treated in the same manner when similar mowing violations are issued by Defendant CITY." (Compl. at ¶ 60.) This fails to satisfy the pleading requirements established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct.

1937 (2009). The Supreme Court held in those cases that simply pleading the elements of a cause of action is insufficient to state a claim for which relief may be granted. Specifically in *Iqbal*, the court held that the plaintiff failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination. Plaintiff in *Iqbal* alleged that certain defendants advanced a policy under which he was held him in harsh conditions of confinement based on his race and for no legitimate penological interest. *Id.* at 1951. The court held this was insufficient, noting that although it must accept as true all of the factual allegations contained in a complaint, this tenet is inapplicable to legal conclusions.

Soto has simply pled the legal conclusion that the City treated similarly situated contractors outside the protected class differently when enforcing the mowing ordinance. This simple statement of an element that Plaintiff is required to prove is insufficient to state a claim, pursuant to *Twombly* and *Iqbal*. Plaintiff's Equal Protection claims must therefore be dismissed.

**D.     The Two-Year Statute Of Limitations Bars Plaintiff's Fair Housing Act Claim**

The statute of limitations period applicable to the Fair Housing Act is two years. (42 USC § 3613.) In a discrimination context, a continuing violation can toll the two-year statute of limitations, but only where some act within the statute of limitations period rises to the level of a violation. (*United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977) ("The emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.")). Also, to establish a defendant had a discriminatory pattern or practice constituting a continuing violation, a plaintiff must show that the character of the discrimatory actions "was not apparent when they were committed but became so when viewed in light of the later acts." *Moskowitz v. Trs. of Purdue Univ.,* 5 F.3d 279, 282 (7th Cir.1993) (*and see Wallace v. Chicago Housing Authority,* 321 F.Supp.2d 968, 973 (N.D.Ill. 2004)).

As with the Equal Protection count, most of Soto's factual allegations in the Fair Housing count fall outside the two-year statute of limitations. In fact, Soto uses the same set of facts as the basis for both counts, but simply omits the individual Defendants Pineda and Chassee from the Fair Housing Count (apparently acknowledging that the alleged racial remark and laughter did not violate the Fair Housing Act). However, Soto cannot take advantage of the continuing violation doctrine because he pleads an awareness of the purported discriminatory motive from the very first alleged incident, on or about May 10, 1999.

Soto filed suit on June 10, 2010, and is therefore left with the incidents occurring during the preceding two years. Plaintiff alleges the City, Kalchbrenner and Beifuss treated him differently because of his race and the race of his customers by requiring him to submit plans showing gas service for one of his properties, when he had not been required to submit such plans for his properties on prior occasions, and by citing him under the City's grass and weeds ordinance when six of his properties had grass and weeds that were more than 8 inches tall. He alleges the City failed to cite the owner or owners of two other properties that also violated the same ordinance. These incidents do not rise to the level of a Fair Housing Act violation.

To state a claim for discriminatory treatment, Soto must allege facts showing he is a member of a protected class; that defendants imposed the additional requirements and issued the citations against him; and that defendants were aware of individuals outside the protected class who engaged in similar conduct but did not have the additional requirements imposed or the citations issued. *Scialabba v. Sierra Blanca Condominium No. One Ass'n*, 2001 WL 803676, 3 (N.D.Ill.,2001) (attached hereto as Exhibit A); *citing Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1042 (7th Cir.1993); *Gamble v. City of Escondido,* 104 F.3d 300, 304-05 (9th Cir.1996) (applying disparate treatment claim *prima facie* elements to Fair Housing Act case).

Soto claims only that the City required him to note gas service on his plans in 2009, when he had not been required to show gas service on prior sets of plans. However, under the Fair Housing Act, the proper comparison is between a member of a protected class and a non-member. There is no legal significance in comparing a member of a protected class to himself, but at an earlier time. As to the citations for violating the grass and weeds ordinance, Soto does not dispute he violated the ordinance on his six properties. He only alleges there were two other properties in violation of the ordinance whose owner or owners were not cited. Plaintiff's Complaint shows no racial animus or general failure to enforce the ordinance as to the rest of the City's population. Also, pleading that "on information and belief" similarly situated contractors were treated differently simply amounts to pleading a legal conclusion, which fails to satisfy the pleading requirements established by *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S.Ct. 1937.

Finally, the Fair Housing Act makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection herewith, because of race…" 42 USC § 3604(b). Citing Soto for failing to keep the weeds on his vacant lots below 8 inches does not in any way discriminate against him in the terms, conditions or privileges of sale of a dwelling. Requiring Soto and all other builders to submit plans showing gas service, even if not previously required, does not in any way discriminate against Soto in the terms, conditions or privileges of sale of a dwelling. As such, the allegations do not establish a *prima facie* claim of discrimination under the Fair Housing Act.

## F. Any "Official Capacity" Claim Must Be Dismissed

Soto has sued not only the City, but also its Community Development Director and certain trustees in their "official capacities." (Complaint at ¶¶ 5-8). The Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) that "[t]here is no longer a need to bring

official-capacity actions against local government officials, for under *Monell* [*v. New York Dept. of Soc. Servs.*, 436 U.S. 658 (1978)], local government units can be sued directly for damages and injunctive relief." This is so because suing government officials "represents only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165. Because nothing is added by naming the individual Defendants in their official capacities, as well as the City, the "official capacity" claims must be dismissed with prejudice.

**G.      The Prayers For Punitive Damages From The City Must Be Stricken.**

Alternatively, if the case is not dismissed, the punitive damages prayers against the City must be stricken, as the Supreme Court has held that cities are immune from punitive damages for Section 1983 suits. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

**CONCLUSION**

For the forgoing reasons, the Defendants, City of West Chicago, Joanne Kalchbrenner, James Beifuss, Ruben Pineda and Lori Chassee, respectfully request that the Court dismiss the Complaint with prejudice.

Respectfully Submitted,

Paul Rettberg
Jason Callicoat                                      /s/ Jason Callicoat
QUERREY & HARROW, LTD.                   One of the Attorneys for Defendants
175 W. Jackson, Ste. 1600
Chicago, IL 60604
312-540-7000
Document #: 1517974

15
